UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-10030-Civ-MOORE
MAGISTRATE JUDGE P.A. WHITE

ROBERT THOMPSON,                    :

     Petitioner,             :

v.

                     :      REPORT OF

WALTER A. McNEIL,                   :     MAGISTRATE JUDGE

     Respondent.             :

_____ :


    Robert Thompson, a state prisoner currently confined at Union
Correctional Institution at Raiford, Florida, has filed a pro se
petition for writ of habeas corpus pursuant to 28 U.S.C. §2254,
attacking on eight grounds his convictions entered in Case No. 05-
01018 in the Circuit Court of the Sixteenth Judicial Circuit of
Florida at Monroe County.[1]


    This Cause has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2254 Cases in the

---

[1]Thompson essentially raises the following grounds for relief in his
petition: (1) he received ineffective assistance of trial counsel, because his
lawyer presented a doomed defense of mistaken identity, and should have instead
presented the viable defense that he was guilty of the offense of attempted
robbery; (2) the trial court committed fundamental error by not granting his
motion for judgment of acquittal where the video evidence revealed that he had
committed an attempted robbery; (3) the trial court abused its discretion when
it permitted the state to amend the Information on the day of trial and when it
failed to instruct the jury on a necessarily lesser included offense, robbery
without a firearm; (4) the trial court abused its discretion by not granting his
motion for mistrial after the victim testified that she had her own copy of the
DVD; (5) the trial court abused its discretion by allowing the victim to remain
in the courtroom after her highly emotional testimony; (6) the trial court abused
its discretion and circumvented its own ruling by allowing two police officers
to provide lay opinion identification testimony of the accused from watching a
DVD video; (7) the prosecutor knowingly withheld exculpatory evidence in
violation of Brady v. Maryland, 373 U.S. 83 (1963); and (8) the prosecutor
improperly and vindictively charged him with robbery with a firearm when he was
guilty of attempted robbery with no firearm.

United States District Courts.

     For its consideration of the petition with attached exhibits, the Court has the  respondent's response to an order to show cause with multiple exhibits, and the petitioner's reply with supporting exhibits.

     The relevant procedural history of this case is as follows. Thompson was convicted after jury trial of the offenses of robbery with a deadly weapon and aggravated assault with a deadly weapon. (Record on Direct Appeal at 103-04, 120)(DE# 15; App. A). He was sentenced as a prison releasee reoffender to a life term of imprisonment as to the robbery conviction and a concurrent five-year term as to the aggravated assault conviction. Id. at 121-25. Trial counsel filed a timely notice of appeal from the convictions and sentences. After proceedings conducted pursuant to Anders v. California, 386 U.S. 738 (1967), the Florida Third District Court of Appeal per curiam affirmed the convictions and sentences in a decision without written opinion issued on June 27, 2007.[2] (DE# 15-5; App. D-M). See also Thompson v. State, 959 So. 2d 739 (Fla. 3 DCA 2007).

---

     [2]Appellate counsel set forth the following possible issues for reversal in the Memorandum Brief: (1) whether there was sufficient evidence that Thompson was the individual who robbed the cab driver; (2) whether the trial court reversibly erred in denying Thompson's motion to suppress the photographic line-up identification; (3) whether the trial court reversibly erred by allowing the plastic cup and Thompson's fingerprints from that cup to be admitted into evidence; and (4) whether Thompson's sentence of life without parole as a Prison Releasee Reoffender was constitutional. (DE# 15-5; App. G). Thompson filed a pro se brief, raising the following claims: (1) the adjudication of guilt entered by the trial court was not supported by competent, substantial evidence; (2) reversible error occurred where the trial judge proceeded to trial without ruling on a motion for recusal; (3) the adjudication of guilt entered constituted a void judgment as the trial court was without jurisdiction to try the case, because a motion for disqualification had been filed; and (4) the sentence imposed exceeded the statutory maximum sentence in violation of Blakely v. Washington, 542 U.S. 296 (2004). (DE# 15-5; App. H).

Approximately one year later, Thompson sought postconviction relief, filing on or about June 30, 2008, a _pro se_ motion with supporting Appendix pursuant to Fla.R.Crim.P. 3.850, challenging his convictions and sentences on the identical eight grounds presented in the instant federal petition. (DE# 15-6; App. O). On the same date, he filed a _pro se_ motion, requesting the Clerk of court to provide him with the DVD admitted as evidence at trial to the extent that it be included as an exhibit to his Rule 3.850 motion. (DE# 15-6; App. N). By order entered on July 22, 2008, the trial court denied the Rule 3.850 motion without prejudice as legally insufficient on its face in that Thompson had failed to properly execute the motion under oath. (DE# 15-7; App. P). By separate order entered on August 8, 2006, the trial court denied the motion to produce evidence, but noted that the DVD would be available to the court for consideration in conjunction with a proper Rule 3.850 motion if it had been part of the record in the case. (DE# 15-7; App. Q).

Thompson did not appeal from the trial court orders and, instead, filed on August 28, 2008, a second _pro se_ Rule 3.850 motion with supporting Appendix, which was identical to the initial motion but was signed under oath. (DE# 15-8; App. R). He also re-filed his motion for production of the videotape evidence. (DE# 15-8; App. S). The state filed a response to the motion with supporting exhibits, as ordered by the court, and asserted that Thompson was not entitled to postconviction relief in that certain claims were meritless while others were procedurally barred. (DE# 15-9; App. U). After Thompson had filed his reply, the trial court summarily denied the motion in a thorough and well-reasoned written order. (DE# 15-9; App. V, W). Thompson's subsequent motion for rehearing was denied. (DE# 15-9, 15-10; App. X, Y). Thompson appealed the trial court's rulings, and the Florida appellate court

issued a *per curiam* affirmance without written opinion. (DE# 15-10; App. Z, AA, BB). <u>See also</u> <u>Thompson v. State</u>, 13 So. 3d 1066 (Fla. 3 DCA 2009). The mandate issued on August 3, 2009. (DE# 15-10; App. CC).

More than seven months after all state court proceedings had concluded, Thompson filed in this Court on March 30, 2010,[3] the instant federal <u>pro</u> <u>se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. The respondent in his response to the order to show cause solely asserts that the instant petition is time-barred pursuant to 28 U.S.C. §2244(d), warranting dismissal of the petition. Full and careful review of the record has revealed that the respondent's assertion of time-bar is meritorious and this petition should be dismissed as time-barred for the reasons indicated immediately below.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must generally file his §2254 petition within one year from the date that his conviction became final by the conclusion of direct review or the expiration of the time for seeking such review. <u>See</u> 28 U.S.C. §2244(d)(1)(A);[4] <u>Jimenez v.</u>

---

[3]This Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." <u>Alexander v. Sec'y Dep't of Corr.</u>, 523 F.3d 1291, 1294 n. 4 (11 Cir. 2008). <u>See also</u> <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

[4]The statute provides that the limitations period shall run from the latest of —

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been

Quarterman, 555 U.S. ___, ___, 129 S.Ct. 681, 685-86, 172 L.Ed.2d
475 (2009)(explaining the rules for calculating the one-year period
under §2244(d)(1)(A)). This period is tolled while a properly filed
application for State post-conviction relief or other collateral
review with respect to the pertinent judgment or claim is pending.[5]
28 U.S.C. §2244(d)(2). Moreover, the one-year limitations period is
subject to equitable tolling in appropriate cases. Holland v.
Florida, ____ U.S. ___, 130 S.Ct. 2549 (June 14, 2010). See also
Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d
669 (2005)(holding that a petitioner is entitled to equitable
tolling only if he shows "(1) that he has been pursuing his rights
diligently, and (2) that some extraordinary circumstance stood in
his way" and prevented timely filing); Helton v. Secretary for
Dept. of Corrections, 259 F.3d 1310, 1312 (11 Cir. 2001)(stating
that "[e]quitable tolling can be applied to prevent the application
of the AEDPA's statutory deadline when 'extraordinary
circumstances' have worked to prevent an otherwise diligent
petitioner from timely filing his petition."), cert. denied, 535
U.S. 1080 (2002); Sandvik v. United States, 177 F.3d 1269, 1271 (11
Cir. 1999).

The judgment of conviction and sentence in the instant case
became final at the latest on September 25, 2007, ninety days after

---

newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or
     (D) the date on which the factual predicate of the claim or
claims presented could have been discovered through the exercise of
due diligence.

28 U.S.C. §2244(d)(1).

[5]A properly-filed application is defined as one whose "delivery and
acceptance are in compliance with the applicable laws and rules governing
filings," which generally govern such matters as the form of the document, the
time limits upon its delivery, the court and office in which it must be lodged,
and the requisite filing fee. Artuz v. Bennett, 531 U.S. 4 (2000)(overruling
Weekley v. Moore, 204 F.3d 1083 (11 Cir. 2000)).

the Florida Third District Court of Appeal affirmed the convictions and sentences on direct appeal. <u>See</u> <u>Jimenez v. Quarterman</u>, 129 S.Ct. at 685; SUP.CT.R. 13(1). This federal petition for writ of habeas corpus challenging the instant convictions was not filed until March 30, 2010, far beyond one-year after the date on which the convictions and sentences became final. The petition is, therefore, time-barred pursuant to 28 U.S.C. §2244(d)(1)(A) unless the appropriate limitations period was extended by properly filed applications for state post-conviction or other collateral review proceedings. 28 U.S.C. §2244(d)(2).

As indicated above, Thompson pursued postconviction challenges to his convictions and sentences in both the state trial and appellate courts. After affording Thompson all the tolling time credit for which he is entitled for the time that the postconviction proceedings remained pending, there was a total of **523-days** of untolled time.[6] Thus, in order for this petition to be deemed timely, Thompson must demonstrate that he is entitled to proceed under one of §2244(d)'s statutory tolling provisions, <u>see</u> §2244(d)(1)(B)-(D), or is entitled to equitable tolling of the limitations period.

Thompson has expressly addressed the limitations issue in his form petition and in a reply to the respondent's response. <u>See</u> Petition at ¶18; Petitioner's Response to Respondent's Response with attached exhibits. (DE# 1, 19). Thompson first asserts that the instant petition has been timely filed, because it was filed

---

[6]Specifically, Thompson filed his first Rule 3.850 motion **278-days** after his convictions and sentences became final. He then waited **7-days** after the time to take an appeal from the dismissal of his first Rule 3.850 before filing the second Rule 3.850 motion, for a total of **285-days** of untolled time. Thompson did not file the instant petition until **238-days** after the appellate court issued its mandate affirming the denial of the second Rule 3.850 motion. There is, therefore, a total of **523-days** of untolled time.

within one-year after the mandate issued by the appellate court. This assertion is unavailing. While Thompson did file the instant petition within one year of the mandate date, he completely overlooks applicable periods of time where no postconviction proceedings whatever were pending, resulting in a total of 523-days of untolled time.

In his effort to circumvent §2244(d)'s procedural bar, Thompson is apparently suggesting that equitable tolling would be appropriate for the periods during which the exhaustion doctrine precluded him from filing his habeas corpus petition. See 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....”). Because the tolling provisions of §2244(d)(2) already accommodate the exhaustion requirement that petitioner faced, he would not be entitled to equitable tolling on this basis. See Smith v. McGinnis, 208 F.3d 13, 17-18 (2 Cir. 2000). See also Payton v. Brigano, 256 F.3d 405, 408 (6 Cir. 2001)(holding that AEDPA's statute of limitations begins to run on the date a state prisoner's direct appeal becomes final, not on the date on which the petitioner exhausts all of his state post-conviction remedies); Franklin v. Bagley, 27 Fed. Appx. 541, 542-543 (6 Cir. 2001)(finding that limitations period not equitably tolled due to the fact that petitioner was attempting to exhaust all of his state court remedies prior to filing his federal habeas petition, absent a showing of due diligence). Moreover, Thompson has not demonstrated that he acted with due diligence in attempting to exhaust his state court remedies prior to filing his habeas petition. He waited more than nine months following the affirmance of his convictions and sentences on direct appeal to seek state post-conviction relief.

From review of the record, it appears as if Thompson might also be claiming that he is entitled to equitable tolling of the limitations period on the basis of actual innocence. It is first noted that it is still unclear whether the Eleventh Circuit will recognize an "actual innocence" exception to the AEDPA's one year statute of limitations.[7] See e.g., Milton v. Secretary, Department of Corrections, 347 Fed.Appx. 528, 2009 WL 3150246 (11 Cir. 2009), citing, Wyzykowski v. Department of Corr., 226 F.3d 1213, 1218-19 (11 Cir. 2000)("To avoid answering that difficult constitutional question until necessary, we have held that before addressing whether the AEDPA's limitations period constitutes a violation of the Suspension Clause in the case of a claim of actual innocence, we should first consider whether the petitioner can show actual innocence."); Taylor v. Secretary, Dep't of Corrections, 230 Fed. Appx. 944, 945 (11 Cir. 2007)("[W]e have never held that there is an 'actual innocence' exception to the AEDPA's one-year statute of limitations, and we decline to do so in the instant case because [the petitioner] has failed to make a substantial showing of actual innocence.").

"To establish actual innocence, [a habeas petitioner] must demonstrate that ... 'it is more likely than not that no reasonable [trier of fact] would have convicted him.' Schlup v. Delo, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." Bousley v. United States, 523 U.S. 614, 623 (1998). "[T]he Schlup standard is demanding and permits review only in the

---

[7]Several other circuit courts have recognized such an exception. See e.g., Souter v. Jones, 395 F.3d 577, 602 (6 Cir. 2005)("[W]e hold that where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying constitutional claims."); Flanders v. Graves, 299 F.3d 974, 977 (8 Cir. 2002)("[A]ctual innocence, if it can be shown, opens the gate to consideration of constitutional claims on their merits, claims that would otherwise be procedurally barred.").

"'extraordinary' case." House v. Bell, 547 U.S. 518, 538 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of [untimely] claims." Id. at 537. In this context, "actual innocence" means factual innocence, not mere legal insufficiency. See Sawyer v. Whitley, 505 U.S. 333, 339 (1992). See also Bousley, 523 U.S. at 623-624; Doe v. Menefee, 391 F.3d 147, 162 (2 Cir. 2004)("As Schlup makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). Schlup observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." 513 U.S. at 324.

Here, Thompson fails to state a colorable claim of actual innocence. Thompson has submitted no "new reliable evidence" to support his claim of actual innocence of the subject crimes nor has he suggested that this requisite evidence exists so as to meet the stringent standard. See House v. Bell, 547 U.S. 518. Further, it appears from full review of the pleadings filed in this Court as well as the state court pleadings that Thompson is essentially challenging the sufficiency of the evidence to sustain his conviction for robbery with a deadly weapon and/or conviction for aggravated assault with a deadly weapon. As the Schlup decision explains, the gateway actual-innocence standard is "by no means equivalent to the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)," which governs claims of

insufficient evidence. <u>Schlup</u>, 513 U.S. at 330. As indicated above, actual innocence means factual innocence, not mere legal insufficiency. <u>See</u> <u>Sawyer v. Whitley</u>, 505 U.S. at 333; <u>Bousley</u>, 523 U.S. at 623-624; <u>Doe v. Menefee</u>, 391 F.3d at 162.

As to his claim that the evidence was insufficient to sustain his conviction for robbery with a deadly weapon in that he was, instead, guilty of attempted robbery, such a claim was rejected on direct appeal. <u>See</u> <u>Thompson v. State</u>, 959 So. 2d 739 (Fla. 3 DCA 2007). Again, during the postconviction proceeding, the claim was found meritless when addressed in conjunction with various ineffective assistance of trial counsel claims. <u>See</u> Order Denying Motion for Postconviction Relief. (DE# 15-9; App. W). Before denying Thompson postconviction relief, the trial court reviewed the trial transcript and pertinent evidence admitted at trial, such as a videotape recording of a portion of the criminal incident. <u>Id</u>. The relevant portions of the record were attached to the trial court's order. <u>Id</u>. When rejecting as meritless Thompson's claim that his lawyer rendered ineffective assistance when she pursued a mistaken identity defense rather than an "attempted robbery" defense, the trial court stated in relevant part as follows in its order:

> 9. In reviewing defense counsel's strategy, it is important to consider that the Court finds that the evidence in support of [Thompson's] convictions is overwhelming. In other words, the defense attorney had precious little to work with. She chose a mistaken identity defense. In fact, the trial transcript contains support for this strategy. On Page 237, Lines 2 - 18, of the Trial Transcript (attached as Exhibit 1), the victim admits that she was initially unable to identify the perpetrator from a photo line-up.
>
> 10. According to [Thompson] ... the defense of "<u>Attempted Robbery</u>" was shown conclusively on the video" which means to him, that his attorney should have conceded identity and tried to get the jury to find him guilty of the lesser included offense of attempted robbery.

11. During the course of the trial, the State did introduce into evidence as State's Exhibit 1 a video recording of a portion of the incident in question which was taken from a camera on the dashboard of the taxi cab occupied by the victim (Trial Transcript, Page 228 Line 10 - Page 229, Line 23 attached hereto as Exhibit 2). An exact duplicate of State's Exhibit 1 at trial, the video, is attached hereto as Exhibit 3.

12. A review of the video demonstrates that [Thompson's] own subjective description of the contents of the video is inaccurate. While [Thompson] now claims that he was holding a driver's license to the victim's neck ..., the video shows that the robber had a tapered object which was larger and longer and shaped differently than a driver's license and looked just like a knife to the victim's neck. While [Thompson] now claims ... that he took nothing from the cab, the video shows the robber fleeing the scene with an object that looks like a duffel bag dangling from his hand.

13. [Thompson's] reliance on the video tape as the key to his "<u>Attempted Robbery</u>" defense is further undermined by the testimony of the victim. At trial, the victim testified that it was a knife which was held to her throat (Trial Transcript Page 218, Lines 9 - 14, Exhibit 4). The victim also testified at trial that she saw [Thompson] with her duffel bag in his hand as he was running up Galveston Lane (Trial Transcript, Page 221, Line 9 - Page 222, Line 4, attached hereto as Exhibit 5).

(emphasis supplied). <u>Id</u>. at 2-4.

Besides relying on the DVD recording to support his claim in the Rule 3.850 proceeding that he was innocent of robbery with a deadly weapon, Thompson submitted an affidavit executed by this mother. (Exhibit K to Appendix to Motion for Postconviction Relief)(DE# 15-8; App. R). Hilda Thompson averred in pertinent part that, immediately after the incident, her son came to her house and told her:

that he had attemp [sic] to rob a taxi in "poor house alley" formally Galveston Lane. He said he did not get any thing from the attempt because the driver jumped out of the cab and ran screaming toward Angela Street.

11

Id. He claimed that his mother's testimony would have altered the outcome of the trial in that her testimony would have impeached the testimony of Officers Zamora and Barrios. As is true of the DVD recording, the post-trial evidence relied on by Thompson is clearly not new. The affidavit is also not reliable to support any claim of actual innocence of the subject crimes. The affidavit is based upon hearsay statements regarding what Thompson allegedly told his mother after the criminal incident. Besides the obvious "suspect" nature of the now-relied upon affidavit, the affidavit is substantively unimpressive. As aptly noted by the trial court, "the testimony of Zamora and Barrios went to the issue of identification of the perpetrator which [Thompson] concedes was overwhelming."[8] (Order Denying Motion for Postconviction Relief at 4). The trial court's ruling was affirmed. See Thompson v. State, 13 So. 3d 1066 (Fla. 3 DCA 2009).

Further, evidence pertaining to the credibility of witnesses is not evidence of factual innocence. See Calderon v. Thompson, 523 U.S. 538, 562-63, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)(rejecting evidence which impeached the credibility of the jailhouse informants who testified that petitioner confessed the rape and murder to them, the court held that the "impeachment evidence provide[d] no basis for finding a miscarriage of justice ... [because] the evidence is a step removed from evidence pertaining to the crime itself" (citation omitted)). Impeaching evidence alone

---

[8]Officers Barrios and Zamora were permitted to testify at trial as civilian witnesses. They similarly testified that they were familiar with Thompson, having known him for many years. They further testified that they had seen Thompson the evening before the incident and the day of the incident and that he had been wearing the same baseball cap worn by the perpetrator in the videotape recording. Both Barrios and Zamora identified Thompson as the perpetrator captured on the recording and they identified him at trial as the one seen in the videotape recording. For a more detailed recitation of the facts of the case,  see the Memorandum Brief of Appellant. (DE# 15-5; App. G). See also Trial Transcript. (DE# 15-1, 15-2; 15-3, 15-4; App. B).

cannot supply the basis for a new trial, because it does not necessarily prove perjury, which requires a showing that the witness intentionally lied on the stand. <u>United States v. Schlei</u>, 122 F.3d 944, 991 (11 Cir. 1997); <u>Taylor v. State</u>, 3 So.3d 986, 993-94 (Fla. 2 DCA 2009)(stating that when determining whether newly discovered evidence compels a new trial, trial court should consider whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence). There has been no showing that either or both police officers, testifying as lay witnesses, lied on the stand when testifying in this particular case. Also, contrary to Thompson's assertion, trial counsel was well-aware at the time of trial that, immediately after the incident, the victim refused to make a positive identification of the perpetrator because she had not been one-hundred percent certain of her identification. <u>See</u> Trial Transcript at 234-39. However, a few days later, she was certain of her identification and she advised the police. <u>Id</u>. Accordingly, there was no *Brady*-violation and the subject evidence is not new.

In any event, for equitable tolling to apply, a petitioner has the burden of proving: "(1) that he ha[d] been pursuing his rights diligently, *and* (2) that some extraordinary circumstance stood in his way and prevented timely filing." (emphasis added) <u>Lawrence v. Florida</u>, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007)(quotation marks and citation omitted). The Eleventh Circuit has continued to emphasize that "[e]quitable tolling is an extraordinary remedy that must be applied sparingly" for "[a] truly extreme case." <u>Holland v. Florida</u>, 539 F.3d 1334, 1338 (11 Cir. 2008), <u>rev'd and remanded on other grounds</u>, ___ U.S. ___, 130 S.Ct. 2549 (2010). Review of the record in this case indicates that Thompson has not pursued the process with diligence and alacrity and has, therefore, not sustained his burden of proving that the

13

factual predicates of this case warrant equitable tolling. For example, he waited 278-days from the time that his convictions and sentences became final before initiating state postconviction relief. He then waited close to eight months to file this federal petition after all claims had been exhausted. Thompson offers no explanation whatever for the delay in filing the instant federal petition. "[E]quity is not intended for those who sleep on their rights." See Fisher v. Johnson, 174 F.3d 710 (5 Cir. 1999), citing, Convey v. Arkansas River Co., 865 F.2d 660, 662 (5 Cir. 1989).

The record also does not demomstrate that Thompson was in any way impeded by any unconstitutional State action in pursuing state postconviction relief or filing this federal petition for writ of habeas corpus. Finally, Thompson's status as an unskilled layperson does not excuse the delay. See Johnson v. United States, 544 U.S. 295, 311, 125 S.Ct. 1571, 1582 (2005)(stating that "the Court has never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). See also Rivers v. United States, 416 F.3d at 1323 (holding that while movant's lack of education may have delayed his efforts to vacate his state conviction, his procedural ignorance is not an excuse for prolonged inattention when promptness is required).

In conclusion, Thompson has presented no valid justification supported by the record for his failure to file his federal habeas corpus petition attacking the instant convictions before the expiration of the one-year limitations period. Since the claims raised by Thompson in this habeas corpus proceeding are untimely, the claims are time-barred pursuant to 28 U.S.C. §2244(d)(1)-(2) and Thompson is not entitled to review on the merits of those claims. Based upon the foregoing, it is recommended that this

petition for writ of habeas corpus be dismissed as untimely filed pursuant to 28 U.S.C. §2244(d)(1)-(2).[9]

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 23rd day of September, 2010.

UNITED STATES MAGISTRATE JUDGE

cc:   Robert Thompson, Pro Se
      DC# 730917
      Union Correctional Institution
      7819 N.W. 228 Street
      Raiford, FL 32026

      Nicholas A. Merlin, AAG
      Department of Legal Affairs
      444 Brickell Avenue
      Suite 650
      Miami, FL 33131

---

[9]Even if this petition were not subject to dismissal as time-barred, it appears as if Thompson would not be entitled to habeas corpus relief, because full review of the record reveals that all claims raised are meritless. See Order Denying Motion for Postconviction Relief. See also Thompson v. State, 959 So. 2d 739 (Fla. 3 DCA 2007)(affirming convictions on direct appeal); Thompson v. State, 13 So. 3d 1066 (Fla. 3 DCA 2009)(affirming denial of Rule 3.850 motion). See also Trial Transcript. (DE# 15-1, 15-2; 15-3, 15-4; App. B).